UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

T-MOBILE NORTHEAST LLC,

    Plaintiff,

v.

                                  ACTION NO. 4:10cv82

THE CITY COUNCIL OF THE CITY OF
NEWPORT NEWS, VIRGINIA,
       and
THE CITY OF NEWPORT NEWS, VIRGINIA,

    Defendants.

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure, as well as Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia, by an order of reference entered December 29, 2010.

This case was referred for a report and recommendation on cross-motions for summary judgment filed by Plaintiff (ECF No. 23) and Defendants jointly (ECF No. 27). For the reasons stated herein, this Court recommends that Plaintiff's Motion for Summary Judgment be GRANTED IN PART and DENIED IN PART, Plaintiff's state law claims be DISMISSED, and Defendants' Motion for Summary Judgment be DENIED. The Court further recommends that

an injunction be issued requiring the City Council to approve Plaintiff's Conditional Use Permit.

## I. FACTUAL AND PROCEDURAL HISTORY

This action arose from the following set of uncontested facts: In response to customer complaints of a gap in service in the Denbigh area of Newport News, Plaintiff T-Mobile identified a target location for a wireless communication tower on the property of R.O. Nelson Elementary School, located at 826 Moyer Road in the City of Newport News, owned by the Newport News School Board. The property is zoned as P-1 Park in the Newport News zoning plan. After Plaintiff approached the School Board regarding the placement of a 135-foot communications tower with flush-mounted antenna, a lease was executed for a portion of the school property for the construction of the wireless communication tower. The Planning Department together with the School Board Administration staff conducted a joint study into the appropriateness of locating wireless towers on elementary school properties. The report concluded that Nelson Elementary had the "adequate acreage, including wooded areas that can provide screening of the tower and the apparatus." The report also concluded that the tower would "not adversely impact playgrounds and recreational areas," nor would it "unduly impact the adjacent residences, or compromise the recreational area." Following this investigation by the City Planning Commission, the Commission recommended to the City Council that they approve the application for the issuance of T-Mobile's Conditional Use Permit (CUP) on May 5, 2010. On June 8, 2010, the Plaintiff's application for the Conditional Use Permit was considered and denied by the City Council.

During the process of seeking approval of the CUP, three meetings were held. The first meeting was organized by T-Mobile to answer questions regarding their CUP. A notice of this meeting was sent to 150 households immediately surrounding the proposed location of the

2

communications tower. Four residents attended this meeting. Next, representatives of T-Mobile met with members of the Planning Staff during a work session on December 8, 2009 to discuss the location of the tower. Finally, at a public meeting on May 5, 2010, the City Planning Commission voted unanimously to recommend approval of the CUP to the City Council. The City Council held a public meeting to render a final decision on the CUP presented by T-Mobile one month later on June 8, 2010. None of the four citizens who attended T-Mobile's first meeting returned to the Council meeting. Nine citizens spoke at this meeting, six in favor of the T-Mobile communications tower and three opposed the tower. A petition in support of the tower was presented by T-Mobile with 51 signatures. Additionally, an email from another resident expressing concern and opposition to the tower was before the Council. At the end of the meeting, the mayor's motion to approve the CUP failed by a vote of 3-4. The members who voted against approval of the tower were Council members McMillan, Woodbury, Scott, and Vick.

T-Mobile filed this instant action against the City of Newport News and the City Council of the City of Newport News alleging violations of section 704 of the Telecommunications Act of 1996 ("the Act"); namely, Plaintiff argues that the denial was not supported by substantial evidence in a written record in violation of 47 U.S.C. § 332(c)(7)(B)(iii) (2006), and the denial was inappropriately based on concerns of perceived environmental effects of radio emissions in violation of 47 U.S.C. § 332(c)(7)(B)(iv) (2006). Additionally, T-Mobile alleges a Virginia state law claim that the denial of the CUP was an arbitrary, capricious, unlawful decision. T-Mobile is a "person adversely affected" by the alleged violation and has commenced the instant action within 30 days in this Court alleging violations of the Act. 47 U.S.C. § 332(c)(7)(B)(v) (2006). The cross-motions for summary judgment have been fully briefed and oral arguments were held

on January 13, 2011. The matter is ripe for decision.

## II. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For the evidence to present a "genuine" issue of material fact, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the Court must view the facts, and inferences to be drawn from the facts, in the light most favorable to the non-moving party. Id. at 255. Finally, either party may submit as evidence "pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits" to support or rebut a summary judgment motion. Fed. R. Civ. P. 56(c). Both parties agree that there are no material facts in dispute and the action is ripe for summary judgment.

## III. ANALYSIS

The purpose of the Telecommunications Act of 1996 was to "secure lower prices and higher quality services for American Telecommunications consumers and encourage the rapid deployment of new telecommunications technologies." Petersburg Cellular Partnership v. Bd. of Supervisors of Nottoway County, 205 F.3d 688, 693 (4th Cir. 2000) (citing Pub. L. No. 104-104, 110 Stat. 56 (1996)). The Act preserves local zoning authority, provided that the limits placed on a wireless company do not interfere with the provisions of the Act. 47 U.S.C. § 332 (c)(7) ("Preservation of local zoning authority"). The Act then provides for limitations on such local authority to ensure the goals of the Act are not thwarted by local governments. The questions posed in the present case are whether the Newport News City Council's denial of Plaintiff's CUP

was based on "environmental effects of radio frequency emissions" in violation of 47 U.S.C. § 332(c)(7)(B)(iv), and whether the decision was based on "substantial evidence contained in a written record" in accordance with 47 U.S.C. § 332(c)(7)(B)(iii). The presence of substantial evidence in the record will be reviewed first.

### A. Substantial Evidence is Needed to Deny CUP

Substantial evidence has been defined by the Fourth Circuit to mean "more than a mere scintilla of evidence," but less than a preponderance. See e.g., Nottoway Co., 205 F.3d at 693; AT&T Wireless, PCS, Inc. v. City Council of Virginia Beach, 155 F.3d 423, 430 (4th Cir. 1998); NLRB v. Grand Canyon Mining Co., 116 F.3d 1039, 1044 (4th Cir. 1997). It is comprised of such "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Virginia Beach, 155 F.3d at 430 (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951)). The Fourth Circuit has further stated that when considering a legislative act, such as granting or denying a conditional use permit, a "reasonable mind" is that of a reasonable legislator. Id. The court is "not free to substitute its judgment for the" legislature's, and must find substantial support if it existed after a review of the record, even if the court itself would have decided the matter differently. Id. The Act requires that where there is a decision to deny a wireless company's request to construct a service facility, that decision must be supported by substantial evidence in a written record.

Defendants have stated at various times in their briefs and during oral argument that they do not believe the substantial evidence requirement applies to a challenge based on 47 U.S.C. § 332(c)(7)(B)(iv). Rebuttal Mem. in Supp. of Defs. Mot. for Summ. J. at 7, ECF No. 32. We find this argument unpersuasive. Section 332(c) lays out the limitations that the Act seeks to impose on localities' regulatory treatment of all mobile services. When adopting this section of the

5

Telecommunications Act, the Conference Report notes that the adopted version of the Act "prevents Commission preemption of local and State land use decisions and preserves the authority of State and local governments over zoning and land use matters except in limited circumstances set forth . . . ." H.R. Conf. Rep. No. 104-458, at 207-08 (1996). The limitations placed on local land use decisions are outlined in subsections (i) – (v). This Court reads the statute in the most common sense way; that all of the limitations enumerated in (i) – (iv) apply to any denial of a CUP. When denying a CUP, a City and City Council must not overstep their authority by transgressing any of the limitations found in § 332(c)(7)(B). The written record[1] will also provide the evidence to determine if, during the time of their decision, the City Council overstepped their authority under the Act. Reviewing evidence which was not before the City Council as of the date of their decision is irrelevant to the inquiry of what they considered persuasive when the vote was taken.[2] Therefore, the record will be reviewed when considering each of Plaintiff's challenges. The written record in this case consists of the documents before the City Council on the date of their decision.[3] The Court will review the record "as a whole" to determine if the Council's decision was supported by substantial evidence. Id.

### B. City Council and City of Newport News's Decision is Not Supported by Substantial Evidence

In cases considering a City's denial of a CUP for a telecommunications tower, courts

---

[1] Courts have interpreted § 332(c)(7)(B)(iii) to have two separate and distinct requirements; (1) that the decision of the Council be "in writing," and (2) that the decision be based on substantial evidence. See Virginia Beach, 155 F.3d at 428. Plaintiff does not challenge the requirement that the decision be in writing.

[2] Defendants have attached declarations from the City Council members to its Motion for Summary Judgment purporting to explain why they voted to deny the CUP. It seems illogical to include these declarations in the review of the City Council's decision. Declarations made after the vote and in anticipation of litigation have no bearing on this Court's review of the record as it existed at the time of the vote. Cf. Virginia Beach, 155 F.3d at 430 n.5 ("We see no irregularity in the City Council issuing a *verbatim transcript* of its hearing after it made its decision and incorporating that transcript into the record." (emphasis added)).

[3] The Plaintiff T-Mobile has compiled all the documents up until the date of the City Council's final decision denying the CUP. These documents were attached as an appendix to Plaintiff's Motion for Summary Judgment and relied upon by both parties during their argument. The appendix spans several exhibit numbers in the electronic system. ECF No. 24-1—24-8. For ease of reference, the Court will refer to a specific page by its Bates stamp.

have been reluctant to create a bright line test, but have relied heavily on specific facts presented in each case, and this Court will take guidance from these decisions. In <u>Virginia Beach</u>, a case heavily relied on by both parties, the Fourth Circuit overruled the district court's decision and found substantial evidence existed for the City Council's denial of a CUP where there was widespread opposition to a tower placed on church property in a residential neighborhood. At the Planning Commission meeting, open to the public, representatives from both sides spoke on the proposed CUP at the church. "Numerous" area residents spoke against approval, with specific comment on the inappropriateness of placing a tower in a residential neighborhood. 155 F.3d at 424. One resident presented a petition of "ninety signatures that he had collected in the day and a half prior to the hearing." <u>Id.</u> At the City Council meeting, another resident presented a petition with over seven hundred signatures opposing the communications tower. <u>Id.</u> The court found that the "repeated and widespread opposition of a majority of the citizens of Virginia Beach" was sufficient evidence to persuade a reasonable mind to oppose the application. <u>Id.</u> at 430.

In <u>AT&T Wireless PCS, Inc. v. Winston-Salem Zoning Bd. of Adjustment</u>, the court upheld a zoning board's denial of a CUP for a 148-foot tower to be constructed in a residential neighborhood. 172 F.3d 307 (4th Cir. 1999). The record demonstrated that the tower would be the first of its kind in the area and eight residents testified as to the negative visual impact the tower would have on the overall integrity of the neighborhood. <u>Id.</u> at 315. Only one resident testified as to the possible impact on property values, but he stated that in "his experience as a mortgage banker" the tower would adversely affect the value of the surrounding homes. <u>Id.</u> A petition signed by 145 local residents was put before the Zoning Board that strongly opposed the tower. <u>Id.</u> Additionally, the court found persuasive indications that the proposed tower would

stand close to an historic home, and testimony was received from the historic resources planner of Winston-Salem of the impact a tower would have on the historic Hanes House. Id. The court ultimately found that the overall opposition based on the proposed tower's "unsightly physical presence and its impact on the desirability of the neighborhood" amounted to substantial evidence in support of denying the CUP. Id.

Nottoway Co. provided more guidance on what constitutes substantial evidence when the Fourth Circuit stated that a denial based on "*reasonably-founded* concerns of the community" constituted substantial evidence, but concerns expressed that are "objectively unreasonable, such as concerns based upon conjecture or speculation," will not amount to substantial evidence. 205 F.3d at 695 (emphasis in original). The court noted a distinct difference between the number and cohesiveness of citizens' complaints in Virginia Beach and Winston-Salem and the type of opposition expressed in Nottoway Co. Id. In Nottoway Co., only four individuals expressed concerns over the proposed tower, and the concerns expressed were "speculative safety concerns" that were addressed reasonably by the cellular company's plans for the proposed tower. Id. One citizen mentioned in passing that the tower was an "eyesore," but the court did not find this comment was representative of the overall concern of the community. Id. Although the "number of persons expressing concerns, standing alone" did not make the evidence substantial, the number of people did speak to the reasonableness of the concern. Id. at 696. Overall, the court affirmed the district court's decision to overturn the Board of Supervisor's decision to deny the CUP as not supported by substantial evidence. Id.

Keeping the above principles in mind as guidance, this Court cannot find that substantial evidence exists to support the City Council of Newport News's decision to deny T-Mobile's application for a CUP on the R.O. Nelson Elementary property. Plaintiff's proposed site for the

tower is located behind the elementary school, and adjacent to a 150 foot wide wooded buffer on the eastern edge of the property. App. 000001-02. The proposed tower is a 135-foot monopole tower, with flush mounted antennas to minimize its profile, and no equipment shed will be built. The tower will not be marked or lit. During its pursuit of its CUP, Plaintiff sent notices to 150 households in the surrounding community of the proposed tower and alerted to a public meeting held by T-Mobile. App. 000025. Only four residents, representing two households attended, along with Planning Committee and NNPS staff. At the meeting, the balloon test conducted by Plaintiff to demonstrate the visibility of the proposed tower was discussed and the T-Mobile representatives fielded questions about visual impact and radiation effects from the tower. Later, in May 2010 the City Planning Commission, after review of an extensive report which considered the proposed location and impact of the tower at Nelson elementary, as well as alternative locations, voted unanimously to recommend the approval of the CUP to the City Council. App. 000177-185.

The next month on June 5, 2010, the Council held a public meeting and considered Plaintiff's CUP for approval. At this meeting, only nine citizens spoke regarding the application, three of these citizens stated they were opposed to the tower, and no petition was submitted signaling any widespread opposition to the tower. A fourth citizen's email was also before the Council which expressed a number of concerns, and mentioned that the tower would be an "eyesore." One citizen complained of having no notice of the City Council's consideration of the tower, or its location, but then-Mayor Frank stated that "[the application for the proposed wireless tower] was advertised by the City Council. It was advertised by the School Board back when they considered it. It was advertised by the Planning Commission when they considered it. So your not finding out about it until Sunday is kind of strange." App. 000107. One citizen

voiced a number of concerns regarding the tower; including concerns as to a decrease in her property value, and questioned its placement in a populated residential area. This citizen mentioned that a number of her neighbors were concerned about their property values as well, but provided no specificity, nor provided any indication that she was sent on behalf of a number of other citizens, or that they wished for her to speak on their behalf. The second citizen to voice opposition to the tower repeated a number of concerns held by the first citizen; namely, that there would be a "decrease in value of [the] homes" and that there was concern as to the health effects of the tower on the children of the school. App. 000113. The final citizen to speak was a pastor of a nearby Church and discussed his concern that the Council was not considering the overall best interests of the community, and felt the tower would not be neighborly.[4] App. 000114-116.

Although the Court is aware of the Fourth Circuit's charge to not hold citizens to a standard which requires them to come armed with a slew of experts to defeat any CUP, the Court finds that such a nonspecific claim as to a possible decrease in property values for the general community falls closer to the "speculative" nature of comments less likely to be considered substantial evidence by the reasonable legislator. See Nottoway Co., 205 F.3d at 695; see also Virginia Beach, 155 F.3d at 431 (stating that requiring citizens to meet a "predictable barrage" of experts put forth by telecommunications companies with specific experts of their own would "thwart democracy"). The facts present in this case are materially different than in Virginia Beach and Winston-Salem. The record was clear that the meetings were well-advertised, yet only four citizens voiced their opposition to the tower. Putting aside comments as to the health effects of the towers, the only cohesive thread in the concerns of the four citizens was one of a

---

[4] All four of the citizens who expressed opposition to the tower cited a great concern for the health effects, or "radiation effects," that the proposed tower would have on the children who attended the elementary school. Two of the citizens who spoke addressed these health concerns in relative depth, signaling their belief in the importance that this factor should play in the denial of the CUP. As this Court will discuss below, health concerns of this nature cannot be considered in a review of substantial evidence, and will be disregarded pursuant to the Act.

potential decrease in property value. Unlike in Winston-Salem, the citizens professed no basis for their fear of the decrease in property value and the comments were made in a nonspecific speculative nature. Cf. 172 F.3d at 315 ("One resident testified that, *in his experience, as a mortgage banker*, the tower would adversely affect the resale value of the homes surrounding it." (emphasis added)). Without further evidence of a widely shared belief on the part of the community evidenced in the form of a petition or other voiced opposition, four citizens' passing comments on property values of the general neighborhood seem unlikely to have an impact on a reasonable legislator when considering the number of opportunities people in the community had to express their displeasure with the proposed tower. These comments do not amount to substantial evidence.

Defendants rely on a case from the Western District of Virginia to bolster the argument that any member of a city council or zoning board possesses the "known experiences" that would allow a decision maker to "reasonably conclude" that a tower would have an adverse impact on property values. See Cellco Partnership v. Bd. of Supervisors of Roanoke Co., 2004 WL 3223288 (W.D. Va. July 2, 2004). There are significant differences between the CUP at issue, and the set of facts found in Roanoke Co. The tower at issue in Roanoke Co. would have served as a "regional hub" and would consist of a tower with an adjacent 17,000 square foot building, manned by six employees. The tower would have been "studded with over twenty different antennae . . . each of which would be four to six feet in diameter." Id. at *2. It was undisputed that the "proposed tower would be visible from miles around." Id. The monopole tower proposed in this instance hardly paints the same general picture of a large scale industrial station which would permit this Court to simply assume the Council members "reasonably" concluded that the tower would adversely affect the property values of the neighborhood.

Further in Roanoke Co., the concerns regarding the tower aesthetics and "fit with the neighborhood" were the "very reason why some citizens voiced their opposition and two of the supervisors acknowledged those concerns." Id. at *5. This is a far different characterization than can be made of the comments in the present case. The four citizens who spoke at the City Council meeting in Newport News did express concerns other than the health of the children, but these comments were in an enumerated list, and hardly formed the backbone of their concern; much like in Nottoway Co. the concerns were made "in passing." Moreover, in Roanoke Co., a petition signed by fifty-two local residents in opposition to the tower demonstrated the type of "repeated and widespread opposition of a majority of the citizens" found to amount to substantial evidence in Virginia Beach. No petition opposing the tower was before the Newport News City Council. The Court is careful not to draw a bright line at the number of citizens required to amount to substantial evidence; it is not simply that only four citizens spoke against the tower, but that the record demonstrates that the local community was made aware of the proposed tower, public hearings were held where the residents were invited to speak, and yet only four chose to do so. The small number of citizens in opposition calls into question the reasonableness of their concerns. After discounting environmental concerns from radio frequencies, the record overall is relatively silent as to why the CUP for the proposed tower was ultimately denied by the City Council.[5] A few passing speculative concerns as to property values cannot form the basis for substantial evidence.

---

[5] Defendants attempt to bolster their argument for substantial evidence by stressing Councilwoman Scott's concern that the children's safety would be at risk from Plaintiff's communications staff that would monitor the tower. They state that this concern is reasonable and amounts to substantial evidence. Councilwoman Scott's concerns have been reasonably addressed by T-Mobile. A review of the record shows that the tower would be accessed by a 12-foot wide gravel easement that extends from the parking lot along the tree line on the northeast boundary of the school property. App. 000008. Additionally, police and fire departments reviewed the CUP and found no cause for concern. This Court believes that a comment from one City Council member as to a seemingly speculative safety issue does not amount to evidence that a reasonable legislator would find persuasive to deny Plaintiff's CUP. See Nottoway Co., 205 F.3d at 695 (finding a few citizens' safety concerns based upon conjecture or speculation was insubstantial).

The record contains no other material evidence to support the denial of the CUP other than the comments discussed above, but contains significant evidence advanced by T-Mobile to support its application. Therefore, this Court finds that Defendants improperly denied Plaintiff's CUP for the proposed tower at R.O. Nelson Elementary School in violation of 47 U.S.C. § 332(c)(7)(B)(iii).

### C. Environmental Effects are Improper Considerations Under the Act

Section 332(c)(7)(B)(iv) forbids the regulation of the "placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions." 47 U.S.C. § 332 (c)(7)(B)(iv); see also Virginia Beach, 155 F.3d at 431 n.6 ("[C]itizens did mention health concerns from radio emissions, a concern the Act precludes."). Evidence in the record demonstrates that the proposed tower would emit 0.026% of the Maximum Permissible Exposure ("MPE") level. App. 000028-000036. The federal limitation is 100% MPE, demonstrating that the emissions would be well below the acceptable federal limitation, and thus not a basis for denying Plaintiff's CUP. Although the Act does not forbid the discussion of health or environmental concerns based on emissions, those concerns cannot form the basis for a denial.

A review of the record demonstrates that a number of citizens and Council members did express concerns as to possible health effects on the elementary school children. Of the four citizens who spoke against the tower at the City Council vote, each one touched on health effects. One citizen focused on the "radiation exposure" to children, particularly her son, who attended the elementary school. A second citizen's comment focused on the "innocent children" and expressed his concern that science may show a link between brain cancer and cell phones. A

third citizen was slightly vague in his comments, discussing his disappointment that the Council was not acting in the community's best interest. The comments do not explicitly state that this citizen is focused on health effects, however from the surrounding context it appears the gentleman is concerned with the well-being of the children overall. App. 000115 (". . . I believe the School Board are shepherds, overseers, caretakers of our children . . . [and] don't even take that chance."). Finally, an email from a citizen opposing the cell tower states as his first enumerated concern that "I don't think it is the children's best interest to be located in the close proximity to a tower for an entire day- every day." App. 000063.

Both parties are in agreement that the comments on health concerns cannot form the basis for the final denial of the CUP, but whether the Council took these health concerns seriously and based their final denial on these concerns is a murkier question. Plaintiff points to Councilmember Woodbury's record in speaking out and voting against cell towers based on her belief that they cause harm to children. Mem. in Support of Summ. J. at 9, ECF No. 24. Defendant argues that Councilmember Woodbury's comments were made before T-Mobile addressed the issue of radio emissions and the Councilmember was persuaded that health effects are not to be considered when making her final decision. Although this Court finds it unbelievable that a Councilmember would suddenly change a long-held belief after one short discussion, there is nothing in the record that indicates Councilmember Woodbury's opinions after T-Mobile addressed the safety of the radio emissions from the tower.

Plaintiff asks this Court to make a determination that the City Council based its decision on alleged health effects. This Court cannot affirmatively do so in the absence of positive, non-speculative assertions in the record indicating the City Council did in fact base its decision on health effects. See Cellular Tel. Co. v. Zoning Bd. of Adjustment, 90 F. Supp. 2d 557, 572

(D.N.J. 2000) (reviewing convincing evidence that the Board improperly gave significant weight to evidence of health effects, but finding ultimately that the final decision was "ambiguous" and could not form the basis for overturning the Board's decision). However, because this Court finds that substantial evidence does not exist in the record for denying Plaintiff's CUP, after removing any discussion of health effects from the record, it need not decide whether the City Council based its decision on health effects.

### D. An Injuction is the Proper Remedy

Other courts that have considered violations of the Telecommunications Act have found that an injunction ordering the issuance of the conditional use permit is an appropriate remedy. See, e.g., Preferred Sites, LLC v. Troup Co., 296 F.3d 1210, 1222 (11th Cir. 2002) ("We conclude an injunction ordering issuance of a permit is an appropriate remedy for a violation of [the Act]"); Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals, 297 F.3d 14, 22 (1st Cir. 2002) (finding that the proper remedy for a zoning board decision that violates the TCA will be an order instructing the board to authorize construction); Cellular Telephone Co. v. The Town of Oyster Bay, 166 F.3d 490, 496 (2d Cir. 1999) (finding a majority of district courts have held that the appropriate remedy is injunctive relief in the form of an order to issue the relative permits); Nextel Partners, Inc. v. Town of Amherst, 251 F. Supp. 2d 1187, 1200 (W.D.N.Y. 2003) (collecting cases). Since there has been a violation of the Act by the City Council and Plaintiff has properly requested relief in the form of an injunction ordering the Council to approve the CUP and all necessary permits, this Court recommends injunctive relief.

### E. Plaintiff's State Law Claims Should Be Dismissed

Plaintiff has further requested this Court to declare that under Virginia law, the Defendants' denial of Plaintiff's CUP application was arbitrary and unlawful in violation of state

law. T-Mobile had standing to appeal the decision of the City Council as T-Mobile was the party who prepared and presented the application in the proper form and were directly aggrieved by the denial. Newport News Muni. Code § 45-2711 ("Every action contesting a decision of the city council failing to grant a proposed conditional use permit shall be filed within thirty (30) days of such decision with the circuit court having jurisdiction of the land affected by the decision."). The question presented here, however, is whether this Court has the judicial power to hear this state law claim under its supplemental jurisdictional power. 28 U.S.C. § 1367 (2006). It seems without question that the state and federal claims arose from a "common nucleus of operative fact," and if there were a claim actually filed with the Virginia state circuit court, this Court could choose to exercise its § 1367 power within its discretion. United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966). But, in this instance, Plaintiff did not file its appeal with the state circuit court within the 30-day time period mandated by the city code. The 30 days have long expired, and the Plaintiff would now be prohibited from filing the state law claims with the circuit court. Plaintiff no longer has a viable state cause of action. It seems illogical to retain jurisdiction over state matters where there is no viable state claim. Regardless of whether this Court may retain jurisdiction over the state law claims, this Court retains the discretion to decline to hear such state claim matters, and will decline do so in this instance. Id. at 726 ("[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right."). The Court recommends that Plaintiff's state law claims be DISMISSED.[6]

## IV. RECOMMENDATION

For the foregoing reasons, this Court recommends Plaintiff T-Mobile's Motion for Summary Judgment be GRANTED IN PART because the record has failed to demonstrate

---

[6] This point seems to have little relevance to the overall result of this action. During oral arguments, Plaintiff conceded that should they win on their federal claim under the Act, the state law claims would become moot.

substantial support for the denial, but DENIED IN PART in reference to Plaintiff's request for relief on its state law claims and those claims should be DISMISSED. Defendants' Motion for Summary Judgment should be DENIED. The Court recommends issuing an injunction ordering Defendant City Council to approve Plaintiff's CUP and grant all permits necessary.

## V. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(c):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this second amended report to the objecting party, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a *de novo* determination of those portions of this Report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984), cert. denied, 474 U.S. 1019 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

/s/
Tommy E. Miller
United States Magistrate Judge

Norfolk, Virginia
February 4, 2011

17

# CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Kevin P. Oddo, Esq.
LeClair Ryan Flippin Densmore
10 S. Jefferson St., Suite 1800
Drawer 1200
Roanoke, Virginia 24006

Lisa Marie Murphy, Esq.
LeClair Ryan PC
One Columbus Center
283 Constitution Dr., Suite 525
Virginia Beach, Virginia 23462
Counsel for Plaintiff


Darlene Paige Bradberry, Esq.
Nicole Marie Montalto, Esq.
City of Newport News
City Attorney's Office
2400 Washington Avenue
Newport News, Virginia 23607
Counsel for Defendants

Fernando Galindo, Clerk

By_____
Deputy Clerk
February 7, 2011